## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDITH SANDERS BRYANT**<br>**3173 Apple Road, NE**<br>**Washington, DC 20016**<br><br>**Plaintiff,**<br><br>v.<br><br>**CVS PHARMACY, INC.**<br>**1015 15th Street, NW, Suite 1000**<br>**Washington, DC 20005**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED** |

## COMPLAINT
### (Race, Sex & Age Discrimination)

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff Judith Sanders Bryant

(hereafter "Plaintiff"), by her undersigned attorney, hereby files her Complaint.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28

U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically,

Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f).

1. In or about June 13, 2018, Plaintiff filed a formal Charge of Discrimination in

EEOC No. 570-2018-01532 with the U.S. Equal Employment Opportunity Commission

(hereinafter "EEOC").

2. The EEOC accepted Plaintiff's Charge of Discrimination as timely.

3. Defendant was duly notified about Plaintiff's administrative complaint.

4. On June 15, 2018, the EEOC issued Plaintiff a Notice of Right to Sue, by

regular mail, which she received on June 15, 2018.

5.   This Complaint is filed within 90 days after Plaintiff received the Notice of Right to Sue on her EEOC complaint.

6.   Plaintiff has exhausted the administrative remedies available to him under 42 U.S.C. §§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed.

7.   Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant CVS Pharmacy, Inc. (hereinafter "Defendant") has extensive and deliberate contacts in this jurisdiction, including a store location at 3420 Pennsylvania Avenue, SE, Washington, DC 20020, where Plaintiff worked.

## II. THE PARTIES

8.   Plaintiff is a resident of the District and a former employee of Defendant.

9.   Defendant is a major pharmacy chain. Defendant is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b), employing more than 500 employees.

### III. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

My name is Judith S. Sanders. I have been a licensed pharmacist since 1979, for the same company now called CVS Health, which acquired the company formerly known as Peoples Drugstore. I have three college degrees, two from Howard University and a third from Johns Hopkins University.

During this period of my employment I have received excellent reviews. I have been awarded and highlighted as a pharmacist with good pharmacy technique, training skills and tapped as a resource pharmacist for training interns and new incoming CVS pharmacists to prepare them for sitting for the pharmacy boards as well as becoming pharmacy managers. I have also served as an informational officer providing lectures and training to nursing homes and health care facilities on medication and side affects.

At the time (around October 2016) Staff Pharmacist Shazia Ovais was transferred into CVS #1335, where I am Pharmacist In Charge, District Manager Kathleen Harney and Pharmacy Supervisor Trisha Sikora advised me on separate occasions that this was being done because Shazia Ovais had been a problem in at least two or three other CVS pharmacies and they thought I was the one who could assist in training her in best practices for a licensed pharmacist. They said this would be a temporary situation and the staff pharmacist that was being transferred out to make a place for Ms. Ovais, would be returning. This did not happen.

Ms. Ovais has resisted and rejected any attempt at my supervision. She was aided and abetted by Pharmacy Supervisor Yoandree Pierre Jacques who rotated out of this district, District 8, at the end of 2017, which became District 9. This was due to a reorganization of districts and the title of Pharmacy Supervisor because District Manager, combining both job responsibilities. Ms. Jacques was replaced by Alan Theriault who became the new district manager for my store. During her tenure, Ms. Jacques took none of the steps of progressive disciplinary action available to her to discipline and remediate the behavior Ms. Ovais.

Ms. Jacques asked me to develop a plan to assist Ms. Ovais in improving her overall performance. When I reviewed the plan with Ms. Ovais and asked for her input, she said she felt the company did not give us enough hours of technician support and until the company did, she was not going follow the plan. Ms. Ovais sat for a minute and appeared be in thought and said, "I am going to call my cousin." I asked her if her cousin worked for CVS and she acted surprised and denied ever making that statement and said she did not know what I was talking about. I believe that Ms. Ovais has a relative working for or who has sufficient influence with CVS Health which has kept her from being disciplined and terminated for all of her numerous and serious infractions.

These are some of the infractions of Shazia Ovais that I have witnessed as Staff Pharmacist along with the store technicians.

- Editing the pick-up time of a prescription submitted on her shift to reflect a later time or day on my shift causing the medication not to be available for timely customer pick-up and giving the impression that it was my responsibility.

- Editing the pick-up time causing the customer not to receive the email or text notification that the prescription is ready at the promised pick-up time and consequently, there are numerous customer complaints.

- The editing of pick-up times by Ms. Ovais leaves a computer trail of evidence of the times that she has changed the pick-up time.

- Prescriptions were also edited due to the need for insurance adjudication (either because Ms. Ovais indicates she does not have the ability to process insurance plans or she is avoiding a phone call to the insurance companies because of the time it takes).

- Advising customers in obvious distress over insurance issues requiring resolution by her as the pharmacist on duty, to return and see me, when it is her job is to resolve the insurance issue when the prescription is presented.

- Informing customers in obvious distress, particularly cancer patients in pain and/or coming from a surgical procedure or giving birth, that pain medication is not in stock, when it is in the store safe.

- Ms. Ovais has told customers that some prescribed medications are not in stock at the store #1335 because she refuses to go to the computer as I have instructed, to price or inspect the drug to determine its availability. She frequently turns customers away.

- Ms. Ovais has been observed picking up, handling and having prescriptions in her possession that later could no longer be found and had to be duplicated with telephone calls to patients, doctors and other pharmacies. This affected at least twelve (12) customers.

- In-coming prescriptions are being left in the on-order queue (QI) that she could process but leaves for someone else to take care of causing significant back-up problems and customer complaints. It is the pharmacist's job to assist the technicians to ensure that mandatory daily functions get completed.

- Instructions and plans I leave for the technicians are being countermanded or dispensed with by Ms. Ovais so that there is always a back-up in mandatory daily duties not only to fill prescriptions, but also to keep pace with the company required projects and paperwork.

- Ms. Ovais has verbally harassed staff and requested that they stop their assigned duties and only assist her on production (which is filling prescriptions) while at the same time continuing to edit prescriptions out of her shift and into mine to reduce her workload.

- As to above infractions, Ms. Ovais denies them even though they have been observed by all staff members and reported to management.

- There are other infractions Ms. Ovais does admit to, such as technicians not being allowed to pull reclamation on weekends (expired medications).

- Ms. Ovais has admitted that she ignores the daily work station planning board that has been filled with a listing of tasks to be completed and instead re-directs technicians to production leaving tasks undone. Ms. Ovais has said she has to do better, but never does.



4

- Ms. Ovais has allowed the female technicians to violate company policy while in the pharmacy such as playing music, talking and texting on their cellphones; bringing in purses, make-up bags and wallets; bringing in food and not reporting employee infractions for long periods of time.
- Ms. Ovais makes no attempt to maintain the cleanliness of the pharmacy and in the evening does not always allow the technicians to clean up and take out the trash. She continues to leave the pharmacy the moment her shift ends in the middle of the day in complete disarray and disorder without helpful instructions to the staff about the pharmacy condition prior her leaving at the time of the shift change.

At various times, I have reported the concerns listed above to seven (7) persons in upper management or management level in CVS. In the chronological order, the persons are as follows:

Trisha Sikora, Pharmacy Supervisor
Kathleen Harney, District Manager
John Cosmello, Acting Pharmacy Supervisor
Cheyan _____, Pharmacy Supervisor in Training
Ricardo Sanchez, #1335 Store Manager
Yoandree Pierre Jacques, Pharmacy Supervisor
Alan Theriault, District Manager

## 5. What happened to you that you believe was discriminatory?

In late August 2017, I asked for one day off (several weeks in advance) because of the death of my mother-in-law. Because the interment was to be in Arlington Cemetery which has a strict scheduling regimen and its time certain was weeks after her passing, this gave me the ability to give advance notice. A few days before the scheduled interment in September, Yoandree Pierre Jacques asked me to do a 12-hour shift so that Ms. Ovais could go cover another store (pharmacy). Ms. Ovais is not a union employee; I am. Ms. Ovais chooses to do floater work in others stores, I do not. I hesitated, and before I could answer her, Ms. Jacques commented to me in front of all of my employees that I supervise, "Come on Dr. Judy, you still have enough steam left in you to do a 12-hour shift". That comment has been repeated many times and became the butt of jokes in the pharmacy for weeks to come. I believe that was directly referencing my age. I take no extra time off and have always worked my regular shift, come to work early and leave late and do twice as much work as the staff pharmacist, Shazia Ovais. My job responsibility not only includes filling prescriptions it includes mandatory paperwork and projects, employee scheduling, employee evaluations, attending mandatory district meetings on my own time, maintaining the cleanliness in the pharmacy and completing all work left undone by Ms. Ovais.

Soon after her rotation announcement, Ms. Jacques introduced her replacement, Alan Theriault, to Staff Pharmacist Shazia Ovais on her shift and all the employees, everyone but me. Ms. Jacques did not bring Mr. Theriault in on my shift which would have been protocol and professional courtesy since I am Pharmacist In Charge. Not introducing the new district manager to me and the manner in which this was done, exacerbated the creation of this domino affect of the notion that there is a failure on my part to



communicate. I was told by staff that Ms. Jacques pointed out the disarray in the pharmacy to Mr. Theriault as if I were responsible. The lack of order, cleanliness and disarray is one of the long-standing problems generated by Ms. Ovais that has been reported and not addressed.

On Thursday, March 1, 2018, I sent District Manager Alan Theriault an email advising him that I was not resigning from the company, but I was stepping down as Pharmacist In Charge effective immediately. I wrote that I would continue as pharmacist and complete my current projects and was recommending placing Shazia Ovais in charge of the pharmacy. The following afternoon on March 2nd, Mr. Theriault came into the pharmacy and began berating to me in such a loud voice, that some of the customers became alarmed. Theriault kept repeating that Ms. Ovais and I do not communicate and that we better learn how to get along and communicate. His exchange was so concerning that a customer who overheard it, came back into store on Saturday, March 3rd to check on me.

## 6. Why do you believe these actions were discriminatory?

Currently, I am the only African American Pharmacist In Charge in District 9. I have always been a union employee. I believe that Ms. Jacques & Ms. Ovais have been acting in concert to make my job a chaotic, stressful and uncomfortable situation so as to affect my well-being, safety, record of performance and employment security in order to force me to leave the company or retire. My longevity with the company has placed me at the top of the pay scale as possibly one of the highest paid pharmacists. My attendance and performance record has been exemplary the entire time of my tenure with this company, since 1979.

Because CVS Health is a youth-oriented organization, I believe that my hire date of 1979 is a sore point with upper management including the current HR Director, Jane Nyugen. At a recent district meeting, attendees were asked to introduce themselves and say how long each had been with company. When I introduced myself and gave my response, Ms. Nyugen made an offhanded sarcastic comment about my longevity with the company that was audible to the table at large. It should be noted that when Union Representative Lynette Floyd and I met with HR to aggrieve the Final Warning given me by Ms. Jacques, Ms. Nyugen interrupted the meeting, came into room where we sat, shook everyone's hand and walked out. I believe this action was disruptive, discriminatory and a reminder for the HR staff to stay on point.

My last annual evaluation done sometime in March/April 2017 by Pharmacy Supervisor Yoandree Pierre Jacques which she said was based on company targets and indicated that my store did not meet expectations. Therefore her assessment of my performance and my evaluation reflected that I did not meet expectations. In my opinion, what has been happening is a set-up for me to be fired. By transferring Staff Pharmacist Shazia Ovais, who has had serious problems in at least three other stores, into my store knowing her problematic history and then choosing not to supervise her is a way to terminate me. Ms. Ovais' deliberate destructive behavior has been repeatedly referred as my "failure to communicate".

Let me explain what constitutes company targets. Prescriptions have to be filled within an hourly time slot. If they are not, the computer automatically turns them red which means that the pharmacist on



duty is not meeting the company target. If extra prescriptions are pushed into the next shift, such as mine, and not shown on the shift when they were come in because of the editing of pick-up times or withholding a stack of prescriptions and delaying data entry until shortly before the shift change, there will be too many prescriptions than staff can possibly complete in any hour time slot. This means those edited and extra prescriptions will cause everything thing to back up and automatically turn everything red. Ms. Ovais is aware that when she edits pick-up times, holds back prescriptions, does not fill prescriptions and pushes them into another hour time slot, she is causing the computer to turn company targets red. Therefore, the Pharmacist In Charge is held responsible for the failure to meet company targets.

Even though I have documented and reported her for non-compliance, refusal to follow the developed plan and refusal to complete assignments, the CVS Health system does not allow a Pharmacist In Charge supervisory authority over a Staff Pharmacist. It is the responsibility of the Pharmacy Supervisor to provide the appropriate supervision and remediation. Pharmacy Supervisor Yoandree Pierre Jacques has not done so. This was the set-up.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

In early January 2018, Pharmacy Supervisor Yoandree Pierre Jacques gave me a written Final Warning for taking a shortcut in workflow in a manner that was a minor violation of company policy. This shortcut (taking multiple pages of labels of unfilled prescriptions; scanning them to take them off the clock; then manually counting and filling them; but still verifying those prescriptions in the required four different ways before bagging the medication and placing the medication in the bay for pick-up in order to continue the workflow) was taken by me in an attempt to stem the ever-increasing tide of unabated workflow back-up caused by Ms. Ovais pushing unfilled prescriptions into my shift. It was also an attempt by me to alleviate the complaints from the technicians who had been asking for some relief from the stress of constantly having to clean up behind Ms. Ovais' shift in every way, technically and physically.

Ms. Jacques told me that she could not in good conscious give me a simple verbal counseling because this was such a serious company violation, however; in fact this was not a serious violation. Quoting her words, she said, "This is serious. This is unconscionable." It should be noted that I told Ms. Jacques this was not a serious violation, that each prescription was still being verified in the four ways as required, by sight, computer, human count and the matching of the description of the medication with the description on the back of each label. Her answer to me, "So?"

This Final Warning given to me by Ms. Yoandree Pierre Jacques came as a complete surprise, out of the clear blue. It had already been announced that Ms. Jacques was being transferred at the end of the year and would be a district manager in another district. As far as I am aware, Ms. Jacques' last action as it related to me and my store, i.e., was when she came into the store and wrote me up with this Final Warning. Her tone and manner was very hostile and inflexible.



7

Included in this same Final Warning was the mention of a charge of poor customer service due to a complaint by a customer. After I reviewed the written complaint, I discovered that I was not on duty when the incident occurred and my name was not mentioned in the complaint.

Prior to this Final Warning action in January, Ms. Jacques came into my store before the Christmas holiday with one of the regional managers whose name I do not know at this time. The man greeted me by asking, "How do you like your shiny new car?" My answer to him was "My vehicle is 10 years old this week." He exclaimed, "What?" My response was, "It's called wax." The visit soon ended. There was no professional discussion of the operation of the pharmacy. I felt as if Ms. Jacques had discussed me in a negative manner with this regional manager, brought my vehicle to his attention (a stranger) causing him to make a less than cordial remark to a long-standing employee who he was meeting for the first time. My vehicle should not have been a subject of our conversation.

I have other documentation that I can provide upon request. Thank you.



## IV. STATEMENT OF CLAIMS

### Count I: Gender Discrimination – Disparate Treatment (Title VII)

10. Plaintiff adopts and incorporates by reference ¶¶ 1-9 above.

11. Plaintiff is a female who was treated differently than her non-female colleagues.

12. Defendant unlawfully discriminated against Plaintiff based on her gender in violation of Title VII.

13. As a result of Defendant's violations of the Title VII retaliation clause, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### Count II: Age Discrimination – Disparate Treatment (ADEA)

14.  Plaintiff adopts and incorporates by reference ¶¶ 1-13 above.

15. Plaintiff is over the age of 40 who was treated differently by her younger colleagues.

16. Defendant unlawfully discriminated against Plaintiff based on her age in violation of the ADEA.

17. As a result of Defendant's violations of the Title VII retaliation clause, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### Count III: Race Discrimination – Disparate Treatment (Title VII)

18.  Plaintiff adopts and incorporates by reference ¶¶ 1-17 above.

19. Plaintiff is an African American who was treated differently than her non-African American colleagues.

20. Defendant unlawfully discriminated against Plaintiff based on her race in violation of Title VII.

9

21. As a result of Defendant's violations of the Title VII retaliation clause, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## IV. <u>REMEDIES SOUGHT</u>

22. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting her the following relief from Defendant:

a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein;

b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. <u>JURY TRIAL DEMAND</u>

23. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

*Edgar Ndjatou*

_____
EDGAR NDJATOU ( Federal Bar No. 18107)
McCree Ndjatou, PLLC
1828 L Street, NW, Suite 600
Washington, D.C. 20036

T: (202) 290-3724
F: (202) 370-7173
endjatou@mnlawyerspllc.com
*Plaintiff's Counsel*